United States District Court
Southern District of Texas
**ENTERED**
January 12, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| VS. | § CRIMINAL ACTION NO. 4:19-CR-218 |
| | § |
| DANIEL YANEZ. | § |

### ORDER

Pending before the Court is Defendant Daniel Yanez's ("Defendant" or "Yanez") Motion to Suppress (Doc. No. 56). The United States of America ("Government") responded to the motion. (Doc. No. 63). This Court heard argument and took testimony on the Motion. After reviewing the Motion, the testimony, the arguments, and the applicable law, the Court denies the Motion.

**I.   Factual Background**

Early in the morning of February 17, 2018, members of the Houston Police Department responded to a series of four robberies which had just occurred in a particular area of the city. The witnesses and victims of each robbery reported that the perpetrators were two Hispanic males, armed with a camouflage rifle, wearing a black leather jacket, a Houston Texans sweatshirt, and a bandana. The police reported that witnesses identified the suspects as driving a red Dodge Charger with a sunroof and a missing front license plate. A BOLO ("be on the lookout") radio announcement was issued to officers, providing identifying information of the suspects. Specifically, the BOLO contained a description of the suspect's vehicle, the ethnicity of the suspects, and a warning that they were armed.

Houston Police Department (HPD) Officer K. Cummins participated in the search and was stationed in the area of the city that police considered the mostly likely location of the suspects. At approximately 2:20 a.m., Officer Cummins observed a vehicle matching the description in the BOLO—a red Dodge Charger with a sunroof and no front license plate—with two passengers. This vehicle turned out to be Defendant's vehicle. The Defendant's vehicle was traveling south bound on Clearwood Drive when spotted by Officer Cummins, who was headed in the opposite direction of Defendant on the other side of the median-divided street. Upon seeing Defendant's vehicle, Officer Cummins turned around and began to follow.

Shortly thereafter, Officer Cummins observed Defendant's vehicle move from the far-right lane of the road to the far-left lane, within 100 feet of an intersection. In making this movement, the vehicle moved over a solid white line designed to protect the turn lane. Then, Officer Cummins observed Defendant's vehicle make a "sudden U-Turn," later pulling into a gas station. Recognizing both the lane change and the crossing of the solid line to be in violation of certain traffic ordinances, Officer Cummins turned around, followed the Charger into the gas station, and turned on his lights as he approached Defendant's vehicle. Once he arrived at Defendant's vehicle, Officer Cummins viewed items of clothing within the vehicle which matched the clothing described in the BOLO. At this point, he was joined by an HPD sergeant, and they asked Defendant and the other passenger to step out of the vehicle. Officer Cummins later found the camouflaged rifle described in the BOLO when conducting a search of the vehicle.

## II.  Discussion

In his Motion, Defendant argues that all evidence seized from Defendant's vehicle should be suppressed because it was the fruit of an unlawful traffic stop. Specifically, Defendant argues

that Officer Cummins did not have "reasonable suspicion" to stop Defendant, making the stop an unlawful seizure in violation of Defendant's Fourth Amendment rights.

The Fifth Circuit has long recognized "the right of a police officer to make an investigative stop of an individual if he reasonable suspects that the individual is involved in criminal activity." *United States v. Hall*, 557 F.2d 1114, 1116 (5th Cir. 1977). When analyzing a traffic stop, we look to a two-party inquiry, asking whether the officer's action was (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1 (1968). At issue in this case is the first prong.

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). "Reasonable suspicion to support an investigatory stop exists if the officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Thomas*, 997 F.3d 603, 610 (5th Cir. 2021) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). "This standard is met if specific and articulable facts give rise to a suspicion that the person stopped has committed, is committing, or about to commit a crime." *Id.* (internal quotations omitted); *see also Lopez-Moreno*, 420 F.3d at 430 ("[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonable warrant the search and seizure.").

"[A]n alert or BOLO report may provide the reasonable suspicion necessary to justify an investigatory stop." *United States v. Gonzalez*, 190 F.3d 668, 672 (5th Cir. 1998). Whether a BOLO report is sufficient to justify an investigatory stop "may depend upon the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the

3

extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale." *Id.*

The Court finds that the BOLO provided Officer Cummins with the reasonable suspicion necessary to justify an investigatory stop. First, the BOLO described a vehicle that matched the make, model, and color of Defendant's vehicle. Second, the BOLO described the vehicle as having a sunroof and missing a front license plate, a description which matched Defendant's vehicle. Third, the description provided in the BOLO was supported by four separate witnesses of four separate robberies that had just occurred. Fourth, the vehicle was found in the same general area that the robberies took place and where the police believed the suspects were heading. Additionally, the number of people riding in the vehicle matched the BOLO. In summary, the BOLO concerned recent activity, its reliability was verified by officers in the field, it was specific, and it was credible because multiple witnesses from multiple robberies provided similar descriptions. These facts easily amount to the "reasonable suspicion" necessary to justify the stop.[1] Therefore, the stop was lawful, and the subsequent search was similarly lawful. Defendant's motion to suppress is denied.

### III. Conclusion

For the foregoing reasons, the Court hereby denies Defendant's Motion to Suppress. (Doc. No. 56).

Signed at Houston, Texas, this 12th day of January, 2022.

Andrew S. Hanen
United States District Judge

---

[1] Officer Cummins testified that he witnessed Defendant commit multiple traffic violations, giving him a basis to initiate a stop. The Court notes, however, that Cummins did not actually pull Defendant's vehicle over to initiate the encounter. The car was already stopped at an Exxon convenience store. Since the Court has already found that Cummins had more than enough facts to establish reasonable suspicion based upon the BOLO, and since Cummins did not actually stop the vehicle for traffic violations, the Court need not discuss the alleged traffic violations.

4